FRANK ZORRILLA, ETC., Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, MANUEL A. MOREDA, JUDGE, Respondent.

No. C-64-82.     Decided March 11, 1965.

*Manuel Janer Mendía, Ramón R. Lugo Beauchamp*, and *C. Bastián Ramos* for petitioner. *Fiddler, González & Rodríguez*, and *Juan R. Torruella del Valle* for the employer.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Article 32 of the existing Minimum Wage Act, Act No. 96 of June 26, 1956, 29 L.P.R.A. § 246d (Supp. 1963, pp. 167–168) reads as follows:

"(a) The right to institute an action to recover wages which an employee may have against his employer under this act, under the mandatory decrees heretofore or hereafter approved pursuant to its provisions, under the orders promulgated by the Board, or under any contract, agreement or law, shall prescribe upon the lapse of three years. For the purpose of the prescription of such action the time shall be reckoned from the date the employee ceased in his employment with the employer.

"(b) Where the employee is working with the employer, the claim shall include only the wages to which the employee may be entitled, on any score, during the last ten years immediately preceding the date on which he may institute the judicial action.

"(c) In the event the employee has ceased in his employment with the employer, the claim shall include only the last ten years immediately preceding the date of his ceasing.

"(d) In connection with the limitation of actions provided in this section, a change in the nature of the work of the employee shall not constitute a novation of the contract of hire.

"(e) The provisions of this section shall in no wise affect the cases already filed in court or that may be filed within one (1) year after this act takes effect."

The crucial question raised in this petition is whether the three-year term mentioned in the provision copied above is one of extinguishment or of prescription, inasmuch as if it is of extinguishment the rules regarding the interruption of the prescription referred to in § 1873 of the Civil Code,

31 L.P.R.A. § 5303 and especially the extrajudicial claim filed by the creditor[1] would not be applicable.

There is no controversy about the facts. On May 13, 1964 the Secretary of Labor filed an action for compensation for extra hours worked, on behalf of nine workers, against Roque González & Co., Inc., which operates a retail sales business here. Defendant requested the dismissal of the complaint "on the basis that the actions sought to be exercised by the several complainants had *prescribed.*" At the hearing of this motion it was stipulated that, with the exception of one of the employees named Carmen Sobrado, the rest of the beneficiaries of the action had ceased working for defendant on or before May 13, 1961. The Secretary introduced certain correspondence between the parties which was admitted in evidence. It consisted of a letter dated May 23, 1963 addressed by Ovidio Silva, Manager for Area I of the Department of Labor to defendant corporation, making a claim for the extra hours allegedly worked; defendant's answer dated May 30, informing that it had referred the matter to its lawyers and urging the stay of proceedings until the latter should communicate with the Secretary's representative; and a letter of June 13 signed by Mr. Juan R. Torruella del Valle, legal representative for the corporation, refusing the claim.

It is inferred from the foregoing that: (1) if the term is of prescription it was interrupted by the extrajudicial action as evidenced by the correspondence mentioned; and (2) if it is one of extinguishment, by May 13, 1964 complainants had already lost their claim because they did not exercise their right on time—filing of the action—on which the protection of their interest depended. This is so because since the year

---

[1] In general terms, for the differences between extinguishment and prescription see *Eisele* v. *Orcasitas*, 85 P.R.R. 84, 88–89 (1962); Velázquez, *Las Obligaciones según el Derecho Puertorriqueño* 256–57 (Equity of Puerto Rico ed., 1964).

must be reckoned as of 365 days—a construction which we adopted in relation to the computation of prescription terms in *Ortiz* v. *American Railroad Co.*, 62 P.R.R. 171, 177 (1943),[2] ratified in *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330 (1946) and *Escalera* v. *Andino*, 76 P.R.R. 251 (1954)—and inasmuch as 1964 was a leap year the term expired May 12 of said year.

1. Prior to the effectiveness of § 32 of the Minimum Wage Act the term for filing actions for claims of wages was the prescriptive period of three years established by § 1867 of the Civil Code (1930 ed.). *Muñoz* v. *District Court*, 63 P.R.R. 226 (1944); *Parrondo* v. *L. Rodríguez & Co.*, 64 P.R.R. 418 (1945); *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660 (1945); *Jiménez* v. *District Court*, 65 P.R.R. 35 (1945); *Valiente & Cía.* v. *District Court*, 68 P.R.R. 491 (1948); *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250 (1948); *Vicenty* v. *Corona Brewing Corporation*, 73 P.R.R. 131 (1952); *Lebrón* v. *P.R. Ry. Lt. & P. Co.*, 78 P.R.R. 650 (1955); *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647 (1956); *Sierra* v. *Mario Mercado e Hijos*, 81 P.R.R. 305 (1959). Since the decision in the case of *Muñoz*, *supra*, at pp. 238–39, this Court expressed its concern about this prescription statute—which was afterwards characterized in *Jiménez*, *supra*, at p. 39, as "highly unreasonable" in its practical operations—in the following words:

"It is unnecessary for the workman, and even unjust to the employer, considering the modern means of defense available to the former to defend his own rights, that the employer should be under a constant fear of being sued for unpaid wages

---

[2] He rested on 1 Manresa, *Comentarios al Código Civil Español* 150 (6th ed. 1943), in his gloss of § 7 of said legal code which is identical to § 8 of ours. "The Code does not speak of years, but applying the principle on which its § 7 is inspired, it seems that the year must be computed as comprising twelve natural months and consisting of 365 days, unless the law or the agreement referred to a particular year and the same is a leap year."

during the whole existence of the contract of services not having a fixed period and even within three years after the respective services were last rendered. In many cases the employer runs the risk of losing the evidence which he could have used for his defense if the action had been brought against him within a reasonable time; in other cases the amount of the compensation sought might increase to such proportion that a judgment against him might cause his ruin economically. But these considerations, just and reasonable as they are, should be brought before the Legislative Assembly and not before the courts of justice, who are estopped from passing judgment on the soundness and wisdom of a law."

Later, in *Chabrán, supra,* at pp. 264–65, we reiterated that:

"The fundamental theory on which § 1867 is predicated— that an employee will be afraid to sue his employer while he remains in his employ—is outmoded, at least where as here a powerful union represents the employees in negotiating collective bargaining agreements. We take judicial notice that the six-week strike involved herein paralyzed almost all economic activity on this island, which is dependent on the shipping industry for its existence. The plaintiff and his colleagues had an unfettered right to engage in this strike. But no one who lived through it could reasonably say that it showed timidity and fear on the part of the employees toward their employers.

"This theory will no longer bear inspection in many cases in the light of modern conditions under which (1) organized labor engages through unions in collective bargaining with employers, often as here on an industry-wide basis; (2) the insular Labor Department, through its Conciliation Service and its attorneys who conduct private litigation on behalf of workers, protects the rights of the latter; (3) a Minimum Wage Board established minimum wages, maximum hours and working conditions for entire industries; (4) Federal and insular Boards exist to prevent unfair labor practices by employers; (5) Federal and insular statutes make it a crime for an employer to discharge or otherwise discriminate against an employee because he sues the former for unpaid wages, 29 U.S.C. § 215(a); § 18, Act No. 379, Laws of Puerto Rico, 1948."

In *Agostini* v. *Superior Ct.; P.R. Lighterage Co.*, 82 P.R.R. 213 (1961) applying subsection (e) of § 32, we stated that the prescription of an action in a claim for wages filed more than a year after the effectiveness of the Minimum Wage Act of 1956 is governed by this Act and not by § 1867 of the Civil Code. Both in *Agostini, supra,* and in *Rodríguez* v. *Eastern Sugar Associates*, 82 P.R.R. 563 (1961) decided pursuant to § 32 we referred to the prescription of the action, probably following the terms of the act itself, but in none of them was involved the question now before us. In both cases it was sought to determine the starting point for the running of prescription; in the first, whether the occurrence of a strike or the seizure by the government of the operations of the employer caused the ceasing of the rendering of services; in the second, we considered a certain aspect peculiar to the rendering of services in seasonal industries. They do not constitute, therefore, a precedent for the basic determination we are called upon to make now.

2. Since 1955, the Legislative Assembly of Puerto Rico, through the Joint Labor Committee of the Senate and the House of Representatives, began to make a study of wages and labor conditions prevalent in Puerto Rico both in the sphere of local and interstate activities. This work yielded Senate Bill 803 and House Bill 1538 which recognized among other basic objectives the need to "modernize in a realist form the provisions concerning prescription of actions in claims for wages equitably to workers and employers." 8-3 Journal of Proceedings 1065.

When explaining subsection (a) of § 32, the report submitted by that committee specifically states at p. 1072 of the Journal of Proceedings:

"It is necessary to make clear that the purpose of subsection (a) is that any action for claim of wages which an employee may have against his previous employer will be *forfeited* after

the lapse of three years. In other words, the intention is that *the defense of interruption of prescription cannot be raised through alleged extrajudicial claims,* in cases covered by § 32(a)." (Italics ours.)

It later comments that this article "has been object of the most careful study and analysis," and that "Before including this provision in the bill it was sought to make the most thorough and careful balance of all interests and circumstances involved in this determination. On one hand, the interests and rights of the workers to be compensated in full for the work performed, and on the other hand, *the public interest in fixing a limit to the actions* and to the period of time a claim of this nature can cover" (p. 1072). Specifically, upon referring to the act in effect at that time—§ 1867 of the Civil Code—under which the term could be interrupted indefinitely by means of extrajudicial claims, it stated that said formula *"does not protect the public interest adequately and reasonably",* and that the intention of the proposed section is "to correct this fundamental deficiency". Journal, p. 1073.

To maintain that it is a prescription and not an extinguishment term the Secretary cites certain statements of Representative Lagarde Garcés which appear at page 1240 of the oft quoted Journal.[3] However, a slight examination

---

[3] Such statements are the following:

"Mr. Lagarde Garcés: We have opposed the amendment because even though it is true that in Puerto Rico at present an action covering all the time a person has worked can be filed within three years subsequent to ceasing in an employment, nevertheless, this Act does not close that door. It does not close it. Why? Because if the workman, *even though he continues to work, files the extrajudicial claim, he is entitled to collect for the five previous years.* He makes the extrajudicial claim. He tells the employer: 'Employer, you owe me so much for the preceding four years.' Even without filing the action, he already interrupts the prescription term. Now, in what way does this bill fundamentally improve the present law and case law? Well, it improves them, Colleague; in that at present, if I work at a factory as a laborer of that factory, and I am a carpenter and work as such for ten years, and cease to work as a carpenter and

shows that far from buttressing the contention for which they are invoked, they weaken it, because the legislator is referring to a provision contained in the original bill to the effect that in the case of a workman or employee who was working for the employer at the time of filing the action "if an extrajudicial claim had been filed, the employee may include in his claim the last five years prior to the date of said judicial claim." But it was in no way related to a case, like the one at bar, in which the claim was filed when the employee had already ceased working for the defendant employer. It should be pointed out that even this sole reference to extrajudicial claims was immediately eliminated from the final version of the bill which later became the Minimum Wage Act by increasing from five to ten years the term within which claims could be filed. Journal, p. 1241.

Section 32 (d) which refers to "limitation of actions" when providing that a change in the nature of the work of the employee shall not constitute a novation of the con-

---

work at some other occupation, let's say as foreman, not a carpenter, and I continue to work there in the same factory and leave that factory, if I have not claimed within the three years after I ceased as carpenter, I lose that claim. However, this legal precept herein established, even though it limits the prescription period in general terms to the five years prior to the claim, also providing the manner of interrupting it, which is by means of an extrajudicial claim it makes the exception that in relation to the prescription term provided in this section, that a change in the nature of the tasks of the worker shall not constitute a novation of the employment contract. It means. I, a carpenter for 10 years, I am not getting what I am worth according to the contract, the decree or the law, and afterwards I am transferred to do a foreman's job, where I remain, I do not lose because I was a foreman for three years and did not have the right to claim it; but when I leave the company I am entitled to file my claim. That is the way I understand it, that the only thing this does is to require the worker to interrupt his prescription term through an extrajudicial claim. As soon as he claims extrajudicially, the term is interrupted and he can go on and he is not sacrificing his previous rights pursuant to the old law but, rather he is better guaranteed and secured and correcting what I believe is a jurisprudential error in Puerto Rico." (Italics ours.)

tract of hire, does not alter our conclusion, because it is simply limited to considering a certain situation related to the moment in which it shall be deemed that the employee has ceased in his employment. It is rather related to the ten-year period which can be included in the claim.

With such a clear and oft expressed legislative intention no other conclusion could be possible than that the three-year term in § 32 is one of extinguishment, not susceptible of interruption by extrajudicial[4] claims.

The writ issued will be quashed and the case will be remanded for proceedings not inconsistent with the present opinion.

---

[4] I-II Castán, *Derecho Civil Español, Común y Foral* 854 (10th ed. 1963), points out that even the Supreme Court of Spain has used the term prescription to refer to hypothesis of extinguishment. This Court has done likewise. *Zalduondo* v. *Iturregui*, 83 P.R.R. 1, 25 (1961); *Morales* v. *Federal Land Bank*, 56 P.R.R. 825, 827 (1940); *Felici* v. *Ribas et al.*, 11 P.R.R. 517 (1906).